Clark Law and Associates, LLC
Jina Clark, Formerly Jennie Clark OSB No. 000319
jina@clarklawportland.com
6501 SW Macadam Ave. Suite E
Portland, OR   97239
(503) 238-1010
(503) 238-1212 (facsimile)
Attorney for Plaintiff

Law Offices of Jonny Russell, LLC
Jonathan R. Russell, OSB No. 220641
*Jonnyrussell.law@outlook.com*
500 SW 116 Ave., Fl. 4
Portland, OR 97225
Phone 971.284.1050
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **SANTIAGO KENT,** an individual;<br><br>Plaintiff,<br><br>v.<br><br>**ALASKA AIRLINES, INC.,** a corporation**.**<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT**<br><br>1. Negligent Misrepresentation<br>2. Negligence<br>3. Disability Discrimination by a Place of Public Accommodation (ORS § 659A.142)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Santiago Kent, through Clark Law and Associates, LLC and Law Offices of Jonny Russell, LLC,

**Complaint** 1 of 14

brings this Complaint against Defendants and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Alaska Airlines' decision to deny transportation of a mobility device used by a disabled amputee despite advance notice of the device, confirmation that the device had been documented in the reservation, the availability of manufacturer guidance regarding the wheelchair's transportation requirements, and opportunities to obtain additional information directly from the manufacturer.

2. Rather than conducting a meaningful evaluation of whether Mr. Kent's wheelchair satisfied the applicable federal transportation regulations, Alaska Airlines denied transportation pursuant to a blanket internal policy requiring removable lithium-ion batteries.

3. The consequences to Mr. Kent were substantial. He was denied boarding in the presence of other passengers, forced to purchase replacement airfare, delayed more than six hours in reaching New York for a medically necessary appointment, deprived of previously arranged accessible transportation, and required to navigate significant mobility-related obstacles that could have been avoided had Alaska Airlines accepted the wheelchair for transportation.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff Santiago Kent is a citizen of the State of Oregon.  Defendant Alaska Airlines, Inc. is incorporated under the laws of the State of Alaska and maintains its principal place of business in the State of Washington.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the District of Oregon, including at Portland International Airport in Multnomah County, Oregon.

## PARTIES

6. **Plaintiff Santiago Kent ("Mr. Kent")** is, and at all times relevant to this action was, an adult citizen of the State of Oregon residing in Marion County, Oregon.  Mr. Kent is an individual with a disability who relies upon an iBOT power wheelchair for mobility and travel.

7. **Defendant Alaska Airlines Inc.** ("Alaska Airlines") is a corporation organized and existing under the laws of the State of Alaska with its principal place of business in the State of Washington.  At all times relevant to this action, Alaska Airlines was engaged in the business of providing commercial air transportation to the general public, including within the State of Oregon.

## RELEVANT PRELIMINARY FACTS

8. Mr. Santiago Kent ("Mr. Kent") is a 58-year-old Navy veteran and retired law enforcement sergeant. While serving as a sergeant, Mr. Kent suffered a severe injury to his right leg in the line of duty. Despite years of treatment and 13 surgical procedures, the injury ultimately resulted in the amputation of his right leg.

9. Following the amputation, Mr. Kent underwent extensive rehabilitation and was later fitted with a prosthetic leg.  He also underwent an osseointegration procedure, a specialized surgical process in which a prosthetic device is directly anchored to the remaining bone of the amputated limb.  While the procedure has significantly improved

**Complaint** 3 of 14

Mr. Kent's mobility and quality of life, it also presents ongoing medical risks, including fracture, hardware failure, and implant loosening.

10. As a result of his disability and the limitations associated with his osseointegration implant, Mr. Kent relies on assistive mobility devices, including forearm crutches and a power wheelchair, to safely navigate daily activities and travel. Because of his condition, falls and other mobility-related incidents present a substantial risk of serious injury and complications affecting his implant and prosthetic system.

11. Mr. Kent is an above-knee amputee with an osseointegration implant, a complex orthopedic system that requires specialized surgical management and ongoing monitoring.  On or about November 26, 2025, Mr. Kent suffered a significant fall that damaged the internal hardware of his osseointegration implant, resulting in increased pain, instability, and progressive loosening of the implanted femoral component.

12. Following the fall, Mr. Kent experienced worsening symptoms, including chronic pain, reduced mobility, and difficulty bearing weight.  His treating specialists determined that he required urgent and ongoing medical and surgical treatment from his highly specialized osseointegration team located in New York, one of the few centers in the country capable of managing complications of his nature.  This treatment is not available in Oregon.  As a result, Mr. Kent must travel long distances for medically necessary care, and any disruption to his travel poses a risk of worsening symptoms, delayed intervention, and further damage to the implant.

13. Because of his condition, Mr. Kent relies on his FAA-compliant iBOT mobility device for safe ambulation, stability, and independence.  The iBOT's enclosed, non-removable battery design is essential to his mobility and cannot be substituted with a different device

**Complaint** 4 of 14

without compromising his safety.  The iBOT is specifically engineered to reduce fall risk and provide stability for individuals with complex mobility impairments—a critical need for Mr. Kent given the damage to his internal hardware.

### **RESPONDEAT SUPERIOR**

14. At all times relevant to this action, the acts and omissions alleged herein were committed by Alaska Airlines' officers, employees, agents, and representatives while acting within the course and scope of their employment, agency, or other relationship with Alaska Airlines, and in furtherance of Alaska Airlines' business. Accordingly, Alaska Airlines is liable for such acts and omissions under the doctrine of respondeat superior and other applicable principles of vicarious liability.

### **OPERATIVE FACTUAL ALLEGATIONS**

**A.  Mr. Kent Booked Travel for a Medically Necessary Appointment**

15. In early 2026, Mr. Kent scheduled a medical appointment in New York relating to treatment associated with his osseointegration implant. To attend that appointment, he purchased a ticket on Alaska Airlines for travel from Portland International Airport ("PDX") to John F. Kennedy International Airport ("JFK") on February 10, 2026. During the booking process, Mr. Kent disclosed that he would be traveling with his iBOT power wheelchair.  During the booking process, Mr. Kent disclosed that he would be traveling with a lithium-ion battery-powered mobility device when he completed his reservation.

16. To ensure that all necessary information regarding the wheelchair had been properly documented, Mr. Kent contacted Alaska Airlines on February 4, 2026, approximately one week before his scheduled departure.  During that call, an Alaska Airlines representative

reviewed Mr. Kent's reservation, confirmed that the wheelchair information had been documented, and advised Mr. Kent that he was "good to go." Mr. Kent relied on those representations in preparing for his travel and medical appointment.

17. At the time he booked the flight, Mr. Kent had previously traveled with the same iBOT power wheelchair on commercial airlines without incident.  In particular, Delta Air Lines had transported the wheelchair on multiple occasions without requiring removal of the wheelchair's enclosed lithium-ion batteries.  Based upon his prior travel experience and Alaska Airlines' confirmation that the wheelchair information had been properly documented, Mr. Kent had no reason to believe that any issue would arise on the day of travel.

**B. Alaska Airlines Refused to Transport Mr. Kent's Mobility Device**

18. On February 10, 2026, Mr. Kent arrived at PDX for his scheduled Alaska Airlines flight to New York. During check-in, Mr. Kent provided Alaska Airlines personnel with the manufacturer's iBOT Airline Travel Card, which contains technical specifications regarding the wheelchair, including information concerning the wheelchair's battery system and air transportation procedures.  The check-in process was completed without issue, and Mr. Kent was directed to the departure gate for final processing and tagging of the wheelchair.

19. At the gate, Alaska Airlines personnel informed Mr. Kent that the wheelchair's lithium-ion batteries would need to be removed before the wheelchair could be accepted for transport. Mr. Kent explained that the batteries were enclosed within the wheelchair, were not removable by design, and that the manufacturer did not recommend or permit battery

**Complaint** 6 of 14

removal. He further explained that the wheelchair had previously been transported by other airlines without requiring battery removal.

20. Alaska Airlines personnel advised Mr. Kent that removal of the batteries was required pursuant to Alaska Airlines policy and that the wheelchair could not be transported unless the batteries were removed.

21. As the discussion continued, Alaska Airlines supervisors Amy Lincoln and Crystal Kenck responded to the gate area.  Mr. Kent attempted to provide additional information concerning the wheelchair and its transportation requirements.  He offered manufacturer documentation relating to the device and arranged for representatives from Mobius Mobility—including the company's Chief Executive Officer, Lucas Merrow—to be available by telephone to answer questions regarding the wheelchair's design, battery system, and transportation requirements.

22. Throughout this interaction, Mr. Kent was experiencing significant pain related to the damage to his osseointegration implant sustained during a fall on November 26, 2025. The repeated explanations and extended delay at the gate exacerbated his discomfort. Despite Mr. Kent's repeated explanations that he was traveling for medically necessary treatment and was experiencing significant pain, Alaska Airlines personnel continued to insist on removing the battery and refused to review the manufacturer's documentation or speak with the IBOT representatives.

23. Despite those efforts, Alaska Airlines personnel declined to review certain manufacturer documentation and declined to speak with representatives from Mobius Mobility.  Mr. Kent was advised that Alaska Airlines would not transport the wheelchair unless the batteries could be removed.  Mr. Kent was further informed that there was "nothing we

can do" and that Alaska Airlines' policy was more restrictive than the policies utilized by certain other airlines.

24. The interaction continued for approximately twenty to thirty minutes while other passengers boarded the aircraft.  During this time, Mr. Kent explained that he was traveling to New York for a medically necessary appointment relating to treatment associated with his osseointegration implant and that missing the flight could jeopardize his medical care.  The physical pain Mr. Kent was experiencing made the denial of boarding particularly distressing, as he urgently needed to reach New York for evaluation and treatment of his damaged implant.

25. At no time did Alaska Airlines inspect the wheelchair, consult the manufacturer, review engineering information, or otherwise determine whether the wheelchair's battery system was adequately protected by the design of the device.

26. Alaska Airlines denied transportation of Plaintiff's wheelchair without identifying any engineering concern, battery defect, testing failure, or other specific factual basis demonstrating that Plaintiff's wheelchair could not safely be transported under the applicable federal regulations.

27. Ultimately, Alaska Airlines refused to transport the wheelchair and denied Mr. Kent boarding.  The denial occurred after boarding had commenced and in the presence of other passengers.

28. Following the denial, Alaska Airlines personnel advised Mr. Kent of an alternative itinerary on Delta Air Lines through Salt Lake City.  Mr. Kent subsequently purchased a replacement ticket through Delta Air Lines at an approximate cost of $960.  Delta thereafter transported the same wheelchair without requiring battery removal.

29. As a result of the change in travel arrangements, Mr. Kent arrived in New York more than six hours later than originally scheduled. Because of the delay, he lost previously arranged accessible transportation—and was required to navigate New York City's public transportation system late at night during winter conditions.  At one subway station, an elevator was out of service, requiring Mr. Kent to navigate multiple flights of stairs before reaching street level and continuing to his hotel.

30. On February 16, 2026, Mr. Kent submitted a formal written complaint and demand packet to Alaska Airlines' executive leadership and legal department describing the incident and requesting an investigation, reimbursement, and corrective action.

31. Mr. Kent also submitted a complaint to the United States Department of Transportation concerning Alaska Airlines' refusal to transport his wheelchair.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Negligent Misrepresentation)

### (Plaintiff Santiago Kent Against Defendant Alaska Airlines)

32. Plaintiff realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

33. Defendant Alaska Airlines had a duty to give truthful, non-misleading information based on reasonable consumer expectations.

34. Defendant Alaska Airlines breached that duty on or about February 4, 2026 when Alaska Airlines agent and/or employee misrepresented to Plaintiff that he was "good to go" when Plaintiff called to verify that he was bringing his lithium-ion battery-powered wheelchair.

**Complaint** 9 of 14

35. As a direct and foreseeable result of Alaska Airlines' negligence, Plaintiff was denied boarding, incurred replacement airfare expenses, experienced a substantial delay in obtaining medically necessary treatment, lost previously arranged accessible transportation, and suffered physical pain, inconvenience, humiliation, emotional distress, and other damages according to proof.

36. Plaintiff has suffered economic damages, noneconomic damages, and other damages according to proof.

37. Plaintiff is entitled to recover all damages recoverable under Oregon law.

**SECOND CLAIM FOR RELIEF**

**(Negligence)**

**(Plaintiff Santiago Kent Against Defendant Alaska Airlines)**

38. Plaintiff realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

**Duty**

39. At all relevant times, Alaska Airlines owed Plaintiff a duty to exercise reasonable care in providing commercial air transportation services.

40. The applicable standard of care is informed by the duties imposed under the Air Carrier Access Act and its implementing regulations, including 14 C.F.R. Part 382 and the applicable federal regulations governing the transportation of lithium-ion battery-powered mobility devices.

**Breach**

Complaint 10 of 14

41.  Alaska Airlines breached its duty of reasonable care by refusing to transport Plaintiff's mobility device pursuant to a blanket internal policy requiring removable lithium-ion batteries.

42. Alaska Airlines failed to conduct a meaningful individualized assessment of Plaintiff's wheelchair before denying transportation.

43. Alaska Airlines refused to review the manufacturer's Airline Travel Card and other technical documentation concerning the wheelchair.

44. Alaska Airlines refused Plaintiff's request that it consult representatives of Mobius Mobility concerning the wheelchair's design and transportation requirements.

45. Alaska Airlines denied transportation without determining whether Plaintiff's wheelchair satisfied the applicable federal safety requirements governing lithium-ion battery-powered mobility devices, including whether the wheelchair satisfied the applicable battery-protection requirements.

46. Alaska Airlines denied transportation without identifying any defect in Plaintiff's wheelchair, any failure of applicable battery testing, any engineering concern, or any other circumstance rendering the wheelchair unsafe for transportation under the applicable federal regulations.

47. Alaska Airlines instead denied transportation solely because Plaintiff's wheelchair utilized integrated lithium-ion batteries that were not removable by the user.

**Causation**

48. As a direct and foreseeable result of Alaska Airlines' negligence, Plaintiff was denied boarding, incurred replacement airfare expenses, experienced a substantial delay in obtaining medically necessary treatment, lost previously arranged accessible

transportation, and suffered physical pain, inconvenience, humiliation, emotional distress, and other damages according to proof.

**Damages**

49. Plaintiff has suffered economic damages, noneconomic damages, and other damages according to proof.

50. Plaintiff is entitled to recover all damages recoverable under Oregon law.

## THIRD CLAIM FOR RELIEF

**Disability Discrimination by Places of Public Accommodation (ORS 659A.142)**

**(Plaintiff Santiago Kent Against Defendant Alaska Airlines)**

51. Plaintiff Santiago Kent incorporates by reference paragraphs 1 through 42.

52. Plaintiff is an individual with a disability within the meaning of ORS chapter 659A.

53. Alaska Airlines operates a place of public accommodation within the meaning of ORS 659A.400.

54. Plaintiff sought to utilize Alaska Airlines' transportation services.

55. Alaska Airlines denied Plaintiff the full and equal accommodations, advantages, facilities, privileges, and services offered to the general public by giving him false assurances that Alaska Airlines would accept his lithim battery-powered wheelchair on February 4, 2026 (but denied his wheelchair on the date of the flight); as well as by refusing to transport the mobility device upon which Plaintiff depended because of his disability.

56. Alaska Airlines failed to reasonably modify its policies, practices, or procedures to accommodate Plaintiff's disability.  Alaska Airlines refused to make reasonable modifications to its policies despite the availability of information demonstrating that

Plaintiff's mobility device could safely be transported and despite Plaintiff's repeated requests that Alaska evaluate the device on an individualized basis.  Alaska Airlines failed to reasonably modify its policy despite Plaintiff's requests that it evaluate his wheelchair based upon its actual design and manufacturer information rather than a blanket removable-battery requirement.

57. Alaska Airlines' conduct caused Plaintiff economic damages, noneconomic damages, humiliation, emotional distress, inconvenience, and other damages according to proof.

58. Pursuant to ORS 659A.885, Plaintiff is entitled to recover compensatory damages, reasonable attorney fees, costs, and such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Santiago Kent respectfully request that judgment be entered in their favor and against Defendant Alaska Airlines as follows:

    A.  For economic damages according to proof at trial;

    B.  For noneconomic damages, including damages for emotional distress, humiliation, inconvenience, pain and suffering, and loss of dignity, according to proof at trial;

    C.  For compensatory damages according to proof;

    D.  For punitive damages to the extent permitted by law;

    E.  For reasonable attorney fees pursuant to ORS 659A.885 and any other applicable provision of law;

    F.  For costs and disbursements incurred herein;

    G.  For pre-judgment and post-judgment interest as permitted by law;

H.  For such injunctive or equitable relief as the Court deems just and appropriate, including, if warranted, an order requiring Defendant to modify its policies, practices, and procedures to ensure compliance with applicable law governing the transportation of mobility devices used by passengers with disabilities;

I.  For such other and further relief as the Court deems just and proper.

Signed and dated this 14th day of July 2026.

Respectfully submitted

/s/ Jina Clark, Esq.
Clark Law and Associates, LLC
Jina Clark, Formerly Jennie Clark
OSB No. 000319
6501 SW Macadam Ave. Suite E
Portland, OR   97239
(503) 238-1010
(503) 238-1212 (facsimile)

/s/ Jonathan R. Russell, Esq.
Jonathan R. Russell, OSB No. 220641
Law Offices of Jonny Russell, LLC
500 SW 116 Ave., Fl. 4
Portland, OR 97225
Phone 971.284 1050

**Complaint** 14 of 14